```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TROY J. FOOTE,

                    Plaintiff,           13-CV-0275(MAT)

          v.                             DECISION and ORDER
CAROLYN W. COLVIN, Commissioner
of Social Security,

                    Defendant.
_____
```

## I.   Introduction

Represented by counsel, Troy J. Foote ("plaintiff") has brought this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

The record reveals that on June 10, 2009, plaintiff filed an application for DIB, and on June 30, 2009, plaintiff filed an application for SSI, alleging in both applications a disability onset date of December 31, 2006. Plaintiff's applications were denied, and he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 13, 2011, before ALJ William M. Weir. The ALJ issued an unfavorable decision on August 22, 2011. Plaintiff's request for review of this decision was denied by the Appeals Council on February 8, 2013. Thereafter, plaintiff timely filed this action seeking review of that denial. Doc. 1.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

**III. Summary of Administrative Transcript**

    **A.   Medical Evidence**

Prior to the time period relevant to this case, plaintiff had a history of treatment for back pain dating back to 1993, in which year he suffered an employment-related back injury. T. 297, 419-34, 441-42, 450-52, 472-73, 480. Plaintiff suffered another work-related back injury in 1995. T. 237, 263, 437. In the years leading up to this claim, plaintiff received treatment for back pain and repeated evaluations for workers compensation benefits. T. 418-574. In January 2000, plaintiff underwent a bilateral L5-S1 instrumentation and fusion, after which he participated in physical therapy and progressed well post-operatively. T. 237, 256-58, 267-71, 273-77, 503-08, 512-14, 516, 520, 522-23, 525, 527-28. Throughout this time period prior to plaintiff's claims, during which plaintiff continued to work, plaintiff was rated as having a moderate partial disability for workers compensation evaluation purposes. T.  245, 409, 446-49, 478-79, 486-87, 488-90, 494-96, 534-35.

During the time period relevant to this case, plaintiff continued to treat for back pain. The record also reveals evidence

of an eye impairment and substance abuse issues. Progress notes from Brylin Hospital for the time period February 8, 2007 through July 13, 2007 indicate that plaintiff participated in chemical dependency treatment in connection with a drug court order related to a DWI conviction. T. 576-88. Plaintiff completed the program with "maximum benefit" and was discharged July 10, 2007. T. 577.

Dr. Samuel Balderman completed an internal medicine evaluation on September 17, 2009, upon referral from the Division of Disability Determination. T. 615-25. Plaintiff's gait was normal, although he reported that he could not walk on his toes due to heel pain. T. 616. Dr. Balderman noted that plaintiff had monocular vision, moderate limitation in bending and lifting due to lumbar spine disease, and continued "difficulty with alcohol abuse." T. 618. He found plaintiff to have full ranges of motion of his cervical spine, negative straight leg raise ("SLR") test, and full strength in all limbs and extremities but limitation in lumbar spine range of motion. Id. Dr. Balderman diagnosed plaintiff with status post lumbar spine surgery, learning disability, active alcohol abuse, and no detectable vision in the right eye. T. 617. He noted a stable prognosis. Id.

Dr. Thomas Ryan completed a psychiatric evaluation on November 9, 2009. T. 626-29. Dr. Ryan concluded that the evaluation results were "consistent with psychiatric problems which may interfere to some degree on a daily basis," noting specifically that plaintiff appeared to have "moderate limitation in his ability

3

to make appropriate decisions" and had "mild to moderate limitation in his ability to deal with stress." T. 628. However, Dr. Ryan noted that plaintiff "demonstrate[d] no significant limitation in his ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform some complex tasks," and that he could generally relate with others. Id. Dr. Ryan diagnosed plaintiff with polysubstance abuse and depressive disorder, not otherwise specified, and noted that he questioned plaintiff's "ability to manage benefit payments due to the ongoing substance abuse." Id.

Dr. Hillary Tzetzo, a state agency psychiatrist, reviewed the record and completed a psychiatric review technique form dated December 1, 2009. T. 630-43. Dr. Tzetzo assessed mild limitations in activities of daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace. T. 640. She concluded that plaintiff "appear[ed] capable of adhering to a normal work schedule and performing simple repetitive work," which conclusion she based in part on her completion of a mental residual functional capacity ("RFC") evaluation. T. 642, 644-45.

On December 1, 2009, Dr. K. Barrera completed a physical RFC assessment which found that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of about six hours in an eight-hour

4

workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and push and/or pull to an unlimited extent. T. 89. The RFC found that plaintiff suffered "moderate pain" status post lumbar spine surgery five years ago. Id. On examination, plaintiff had a normal gait, could walk on heels but not toes, and required no assistive devices for ambulating. Id. Plaintiff had some limitation in extension of the lumbar spine, but no limitation in the cervical or thoracic spine, negative SLR test, and full range of motion of all joints and extremities. T. 90. Dr. Barerra opined that plaintiff's allegations regarding limitations due to pain were "disproportionate to objective physical findings and physical exam. Although it can be believed that claimant experiences symptoms and limitations, they cannot be taken to the degree alleged." T. 92. Dr. Barerra concluded that plaintiff remained capable of performing light repetitive work, requiring the use of one eye in a low contact setting. Id.

Treatment records from Dr. Paul Garg cover the time period from July 2, 2010 through March 29, 2011. T. 674-737. During that time frame, Dr. Garg diagnosed plaintiff with chronic pain, depression, borderline hypertension, tobacco abuse, gastroesophageal reflux disorder ("GERD"), hemorrhoids, and anxiety. T. 675-79, 682. Notes contained within Dr. Garg's records indicate that plaintiff was not truthfulat least once, about taking pain medication, and that a pharmacy contacted the doctor's office with concerns regarding plaintiff's abuse of prescription

5

medications. T. 678, 680; see also T. 697 (consulting physician noted that plaintiff continued to report pain although physician "would have thought by now he would be fully healed").

Although plaintiff complained of pain, objective examination and imaging results during this time period showed relatively few underlying issues. An X-ray of plaintiff's lumbar spine taken August 18, 2010 showed degenerative disc disease at L4-L5 and L5-S1, with evidence of posterior fusion at L5-S1, which was consistent with plaintiff's past surgery. T. 727. The vertebral bodies were described as "normal in height and alignment," and the degenerative changes in the sacroiliac joint described as mild. Id. On August 24, 2010, plaintiff had a colonoscopy, during which two polyps were removed which were determined to be "most likely the source of the bleeding"; plaintiff "tolerated the procedure quite well." T. 669, 708. Physical examination on September 27, 2010 found no objective medical results to support plaintiff's report of continued chronic pain. T. 684.

On November 8, 2010, plaintiff saw Dr. Garg in follow-up for hospitalization for epididymitis, and reported that swelling and redness in his left testicle as a result of that condition "ha[d] mostly gone"; Dr. Garg approved plaintiff for return to work with light duty. T. 682. Upon examination November 10, 2010, plaintiff showed no abnormalities or tenderness in the spine, and no abnormalities in the heart or chest, but had swelling and discomfort associated with the prior epididymitis, which condition

6

was "dramatic[ally] improv[ing]." T. 701. On January 3, 2011, plaintiff reported that his depression had improved, and his physical examination showed no abnormalities, although plaintiff reported that he had hemorrhoids which "[o]ccasionally [get] painful" and sometimes resulted in a "little bit [of] bleeding." T. 679. On January 8, 2011, plaintiff's examination showed no neurovascular deficits and no abnormalities in plaintiff's neck, lungs, or heart, although plaintiff reported tenderness in the lumbar spine. T. 677. Throughout his treatment with Dr. Garg, plaintiff was prescribed medications including Lortab, Prilosec, Lexapro, Nucynta, and ibuprofen. T. 679, 682, 684.

Plaintiff's counsel submitted a medical report from Dr. Jeffrey Lewis, dated May 3, 2011. T. 750-52. Upon examination, Dr. Lewis found that plaintiff had "severe restricted range of motion of the lumbar spine," a positive SLR, altered sensation in both lower extremities, and a slow and antalgic gait. T. 751. Dr. Lewis recommended imaging of the lumbar spine, and noted that he would reevaluate plaintiff once the necessary imaging had been performed. T. 752.

Additional evidence submitted by plaintiff's counsel to the Appeals Council following the ALJ's decision included an August 18, 2011 MRI, which showed no evidence of spinal canal stenosis; mild bilateral foraminal stenosis at L4-L5 and left foraminal stenosis at L5-S1; facet arthropathy at L4-L5 and L5-S1; and no abnormal vertebral, paraspinal comment dural, or nerve enhancement. T. 761.

Dr. Lewis followed up with plaintiff on September 4, 2011 to review this MRI, and noted that the MRI "show[ed] a good fusion at L5-S1 with severe disc space degeneration" and that posterolateral fusion was "well healed," but recommended removing screws from the prior fusion as this would have a good chance of reducing plaintiff's reported pain. T. 759.

**B.   Non-Medical and Vocational Evidence**

Plaintiff testified that he suffered an on-the-job back injury "[a] long time ago." T. 55. According to plaintiff, prior to settling his workers compensation claim, he experienced "[p]ain shooting down [his] left leg, numbness in [his] left buttocks, numbness in [his] feet, and just – just pain." Id. Plaintiff testified that he did not feel better following his back surgery. T. 56. He stated that he tried to work after that surgery but he could not because of pain. T. 57. Plaintiff testified that he began treating with Dr. Garg after receiving Medicaid benefits. Id. He testified that he could not perform repetitious lifting, twisting, or bending, because "[the pain] gets real bad." T. 60-61. Plaintiff stated that he could not stand or sit for too long a period of time because the pain would worsen. T. 60-61. In a disability report, plaintiff reported that he had problems sitting and standing too long in one place and that he had sharp pains down his legs and numbness in the arms. T. 174. Plaintiff reported that he stopped working on December 31, 2006, because of "lack of work." Id.

Plaintiff testified that he drank alcohol and smoked marijuana to lessen pain. T. 64-65. According to plaintiff, alcohol and pain medications helped him sleep, and marijuana helped him relax. Id. He stated that on a scale from zero to ten, his pain level was eight on an average day. T. 68. However, he stated that this was only if he was required to be up and moving around; if he had the ability to lay down or recline when needed, his pain level was "less than that." T. 68. Plaintiff testified that when he takes his medicine, his gastroesophageal reflux does not bother him on a regular basis. T. 71. He stated that although his hemorrhoids caused him to "bleed now and then," it did not affect his ability to sit. T. 72. Since his colonoscopy, he had "[not] had the bleeding in a while." Id.

When asked why he alleged disability as of December 31, 2006, plaintiff testified: "I was probably disabled before that. I mean – when I realized that I couldn't really do a job without having any – no pain, then I realized I was disabled. . . . [b]ecause the small little things I was having problem with – I just – I don't know, that's when it clicked, and I just figured I was disabled." T. 79. Plaintiff testified that he felt pain "in [his lower back" and "radiat[ing] up to [his] neck," and that the pain puts him "in a bad mood pretty much." T. 82.

Plaintiff testified that he suffered from depression, stating when asked to explain, "I'm just depressed"; however, plaintiff stated that he "usually can get along with anybody" and that he had

not received any counseling for depression. T. 66-67. Regarding his eye condition, plaintiff testified that he had no vision in his right eye and that this caused depth perception issues. T. 48-49. He testified that he could see out of his left eye but this vision was "sketchy" at night. T. 49. He stated that due to eye strain, he had to rest his eyes frequently. T. 50-51. He testified that he could read fonts in the sizes of newspaper headlines, but had trouble reading smaller print. T. 75.

In a function report completed in August 2009, plaintiff reported that on a daily basis he could make coffee, "go to work (if available)," and then come home and immediately get off of his feet. T. 183. He reported that if no work was available, he could clean the house, do laundry, and get off of his feet. Id. He also took care of his son by cooking, cleaning, and doing laundry. Id. He reported that he could prepare any meal he could "afford to make," and that he prepared meals daily, but tried not to be on his feet too long. T. 184. He listed hobbies of fishing and watching TV. T. 186. He reported that he could not lift more than 50 pounds, could only stand for 15-20 minutes at a time without having pain, had difficulty climbing stairs, kneeling, squatting, and reaching, and that he was legally blind in his right eye. T. 187.

**IV. Applicable Law**

    **A.   Standard of Review**

The Commissioner's decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if

the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); see also, e.g., Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "[I]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). However, the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal.").

**B.   Five-Step Sequential Evaluation**

To be considered disabled within the meaning of the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore,

the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. Id., § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows the five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520; see also, e.g., Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The burden of proof lies with the claimant on steps one through four to show that her impairment or combination of impairments prevents a return to previous employment. Berry, 675 F.2d at 467. If the claimant meets that burden, the Commissioner bears the burden at step five of establishing, with specific reference to the medical evidence, that the claimant's impairment or combination of impairments is not of such severity as to prevent her from performing work that is available in the national economy. Id.; 42 U.S.C. § 423(d)(2)(A); see also, e.g., White v. Secretary of Health and Human Servs., 910 F.2d 64, 65 (2d Cir. 1990).

## V.  The ALJ's Decision

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2006. T. 30. At step two, the ALJ found that plaintiff's status post back surgery and limited vision in the right eye constituted severe impairments within the meaning of the regulations. Id. At step three, the ALJ found that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a listed impairment. T. 30-31. At that step, the ALJ found that plaintiff's depression and substance abuse were not severe because they did not produce more than a minimal effect on plaintiff's ability to perform work activities. T. 31.

At step four, the ALJ determined that plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and that he retained the ability to perform his past relevant work as a cashier. T. 31-34. After a thorough review of the record, the ALJ found that plaintiff had medically determinable impairments that could reasonably be expected to produce plaintiff's pain or other symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the objective medical evidence and RFC assessment. T. 32-34. In making the RFC determination, the ALJ gave significant weight to Dr. Balderman's and Dr. Ryan's opinions based on consistency with the medical record. T. 34. The ALJ gave some weight to Dr. Tzetzo's psychiatric consultation, noting that she did not examine plaintiff. Id. The ALJ gave limited weight to Dr. Lewis's opinion, and gave significant weight to the treatment notes of Dr. Garg, as Dr. Garg was plaintiff's treating physician. Id. Having determined that plaintiff did not suffer from a disability, the ALJ did not proceed to step five.

**VI. Discussion**

Plaintiff contends that the ALJ and Appeals Council erred in (1) assessing plaintiff's credibility; (2) evaluating the severity of plaintiff's pain; and (3) evaluating plaintiff's combination of impairments and finding that he could perform his past relevant work as a cashier. Doc. 22.

**A.   Credibility Assessment**

The ALJ considered both the objective medical evidence and plaintiff's own statements concerning his symptoms. T. 31-34. Ultimately, the ALJ found that "the [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." T. 32. Contrary to plaintiff's contention, the ALJ's decision reflects proper application of the appropriate credibility standard. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 96-7p.

Plaintiff argues, first, that the ALJ erroneously failed to determine that plaintiff's hemorrhoids, learning disability, and vision issues in the left eye (as opposed to blindness in his right eye) were severe impairments. Substantial record evidence, however, supports the ALJ's finding that the plaintiff's allegations as to the symptoms associated with these impairments did not line up with objective medical evidence. As to hemorrhoids, plaintiff himself

14

testified that, after a colonoscopy procedure which removed two polyps, he had "[not] had the bleeding in a while." T. 72. A report of the colonoscopy also concluded that the procedure was successful and that plaintiff tolerated it well. 669, 708. As to plaintiff's learning disability, this impairment received little more than passing reference in the record (see, e.g., T. 45-46, 52-53), and moreover, there is no record evidence that this alleged impairment had any effect on plaintiff's ability to perform light work as found by the ALJ. Finally, as to plaintiff's eye impairments, the ALJ did find plaintiff's right eye impairment to be severe, and noted that this condition restricted plaintiff to monocular work. T. 31. As to any associated left eye impairments, there is no objective medical evidence in the record indicating that these issues would limit plaintiff's ability to perform light work with the above monocular restriction. Considering the medical evidence, the ALJ was within appropriate bounds in failing to credit plaintiff's testimony and reports regarding the severity of any left eye impairments. See, e.g., T. T. 741 (Atwal Eye Care record noting that plaintiff reported vision was blurry in the right eye worse than the left); 743 (noting plaintiff's report that vision had always been poor in the right eye).

Plaintiff also challenges the ALJ's statement that plaintiff "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual." T. 34. Although the Court agrees that the ALJ is required to consider potential

15

explanations for noncompliance with or lack of treatment (see SSR 96-7p), the medical evidence in this case indicates that prior to the ALJ's decision, plaintiff was treating with Dr. Garg on a continuing basis, his examinations were within normal bounds, his prior back surgery was well-healed, and his colonoscopy had given him relief from hemorrhoid symptoms. T. 669, 674-737, 759. Plaintiff's medical records simply do not indicate a need for treatment which he was not receiving.

The Court notes that the ALJ's finding regarding plaintiff's credibility was consistent not only with the objective medical evidence, but also supported by the factors in 20 C.F.R. § 404.1529(c). The record reveals plaintiff himself reported that he was able to perform daily activities such as cleaning, preparing any meal as long as it did not require him to stand too long, and laundry. T. 183-87. Also significantly, plaintiff reported that he stopped working because of "lack of work," and that he was able to go to work, as long as work was available. T. 174, 183. Plaintiff also contends that the ALJ erroneously found that plaintiff made inconsistent statements regarding matters relevant to his disability; however, the record does reveal inconsistency in plaintiff's reports regarding disability, inasmuch as plaintiff indicated that he could continue working if work was available. T. 174, 183. Therefore, plaintiff's contention that the ALJ improperly gave no weight to plaintiff's "continued efforts to continue working" is inconsistent with the record which indicates

16

that plaintiff actually had the ability to perform at least light work, but did not do so because he apparently could not find work and not because of inability to perform work.

Although plaintiff argues that the ALJ erred in finding that plaintiff was vague in describing his symptoms, a review of the hearing transcript reveals several instances in which plaintiff was quite vague. T. 68 (plaintiff testified his pain level was "less than" an eight on an average day, but did not give a number); 82 (plaintiff could not describe why he alleged he became disabled at the end of 2006: "I just figured I was disabled"); 66 (when asked to describe his depression, plaintiff stated, "I'm just depressed"). Moreover, to the extent that plaintiff did adequately describe his pain (see T. 82 [describing pain in lower back radiating up to neck]), the ALJ's decision reflects that he considered these allegations properly alongside objective medical evidence and the factors outlined in 20 C.F.R. § 404.1529(c). In summary, the ALJ's decision reflects proper application of the credibility standard and there is thus no basis for disturbing the credibility finding. The evidence submitted by plaintiff's counsel to the Appeals Council does not alter the validity of the ALJ's credibility determination.

    B.    **Evaluation of Pain**

Plaintiff next contends that the ALJ and Appellate Council erred in evaluating the severity of plaintiff's pain. This contention is essentially an echo of plaintiff's argument that the

17

ALJ erred in assessing plaintiff's credibility. As recounted above, the objective medical evidence, along with the factors outlined in 20 C.F.R. § 404.1529(c), indicate that plaintiff had certain underlying medical impairments, but that these impairments did not substantiate the degree of symptoms about which plaintiff complained at the hearing and in reports. See also 20 C.F.R. § 416.929. This conclusion is bolstered by the record evidence indicating that plaintiff had multiple substance abuse problems including at least one prior DWI, and documented concerns from physician and pharmacy offices regarding plaintiff's drug-seeking behavior. See, e.g., T. 576-88, 678, 680, 697. The evidence submitted by plaintiff's counsel to the Appeals Council does not alter the validity of the ALJ's evaluation.

    **C.    Determination That Plaintiff Could Perform Past Relevant Work as Cashier**

Plaintiff contends that the ALJ erred in assessing plaintiff's RFC and determining that plaintiff could perform past relevant work as a cashier. Once again, plaintiff relies heavily on his own testimony and reports in supporting the argument that the ALJ should have found him unable to perform this past relevant work. The ALJ's finding regarding RFC, however, is supported by substantial evidence. The ALJ properly gave significant weight to the opinions of plaintiff's treating physician, Dr. Garg, and gave significant weight to the consultative examination completed by Dr. Balderman, whose conclusions were wholly consistent with the

18

objective medical evidence contained within Dr. Garg's treatment records. Dr. Balderman noted that plaintiff had an essentially normal exam with the exception of a limited range of motion in the lumbar spine. T. 617-23. The ALJ's conclusions were also consistent with the physical RFC assessment, which found that plaintiff could perform light repetitive work, requiring the use of one eye in a low contact setting. T. 92. The ALJ's conclusions regarding plaintiff's RFC and ability to perform past relevant work are therefore supported by substantial record evidence. The evidence submitted by plaintiff's counsel to the Appeals Council does not alter the validity of the ALJ's conclusion.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 7) is granted, and plaintiff's cross-motion (Doc. 8) is denied. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         July 28, 2015